TIMOTHY D. MCGONIGLE PROF. CORP
Timothy D. McGonigle, Esq. (SBN 115979)
tim@mcgoniglelaw.net
1880 Century Park East, Suite 516
Los Angeles, California 90067
Telephone: (310) 478-7110
Email: tim@mcgoniglelaw.net

BRAUNSTEIN & BRAUNSTEIN, P.C.
George G. Braunstein, Esq. (SBN 134602)
Clark A. Braunstein, Esq. (SBN 278023)
11755 Wilshire Blvd, Suite 1600
Los Angeles, CA 90025
Telephone (310) 914-4999
Email: Info@braunsteinpc.com

Attorneys for Plaintiff CORDELL, LLC.

## UNITED STATE DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CORDELL, LLC, a California Limited Liability Company, | Case No.   **'23CV1264 AGS DEB** |
|  | COMPLAINT FOR: |
| *Plaintiff*, |  |
|  | (1) DECLARATORY RELIEF RE: |
| vs. | (a) COPYRIGHT OWNERSHIP AS WORK MADE FOR HIRE; |
| Larco Productions, Inc., a New York Corporation, and DOES 1-10. | (b) COPYRIGHT OWNERSHIP; ASSIGNMENT, and. |
| *Defendants*. | (c) TRADEMARK OWNERSHIP; LANHAM ACT 43(a)(1)(A) |
|  | DEMAND FOR JURY TRIAL |

Plaintiff Cordell, LLC. ("Cordell" or "Plaintiff") alleges on information and belief as follows:

**PARTIES**

1.     Plaintiff, Cordell, LLC is a California Limited Liability Company duly qualified to conduct business in the State of California, with its principal place of business in Los Angeles, California.

2.     Defendant Larco Productions, Inc. ("Larco") is, on information and belief, a foreign corporation organized under the laws of New York, with its principal place of business listed with the California Secretary of State located in San Diego County.

3.     Plaintiff is ignorant of the true names and capacities of those sued herein as Does 1 through 10, inclusive, and therefore sues by such fictitious names. Plaintiff will seek leave to amend this complaint if necessary to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and thereupon alleges that each of the fictitiously named parties is responsible in some manner for the occurrences herein alleged, and that Plaintiff's losses and damages as herein alleged were proximately caused by the acts and conduct of such fictitiously named parties.

4.     Plaintiff is informed and believes and based thereon alleges that Defendant and each of them, gave consent to, ratified, and/or authorized the acts alleged herein as to each of the remaining Defendants.

1

COMPLAINT

## **BACKGROUND**

5.     In or about August, 2015, after making a payment of $150,000 to exercise its previously-purchased option rights, Plaintiff Cordell contractually acquired all rights to create and/or exploit derivative works based on the 1988 motion picture *Maniac Cop,* directed by William Lustig and written by the late Lawrence G. Cohen (hereinafter, "Larry Cohen").  The derivative rights thereby contractually acquired by Cordell included, but were not limited to, the right to make sequels, prequels, and television series based on *Maniac Cop*. Defendants deny the existence of Cordell's rights.  In addition, Cordell also owns copyright interests relating to the *Maniac Cop* motion picture series, both as a result of the creation and transfer of a work made for hire and through written agreements and contractual performance under those agreements over the course of more than three decades.  On information and belief, relying on the original rights established in the late 1980's, two sequel films have already been produced and Cordell paid substantial consideration to acquire those rights.  Cordell seeks to establish that the sequel and remake rights it obtained are valid and should not be interfered with by Defendants.

COMPLAINT

# JURISDICTION AND VENUE

6.     This is a civil action seeking a declaration of non-infringement and damages in connection with the interpretation of the copyright law and facts asserted, namely, the work made for hire provisions and interpretation of certain assignments of rights under the copyright laws, and also seeking injunctive relief under the Copyright Act, 17 U.S.C. §101, et seq. and declaratory relief under the Lanham Act 15 U.S.C. § 1051, et seq.  This Court has subject matter jurisdiction over these federal questions pursuant to 28 U.S.C. §§ 1331, 1338 (a) & (b), and 15 U.S.C § 1121. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. §1367.

7.     This Court has personal jurisdiction over Defendants in that, among other things, Plaintiff does business and is suffering harm in this judicial district and, on information and belief, Defendants are denying Cordell's rights in and to remakes and sequels to the 1988 classic horror motion picture, *Maniac Cop*.  Additionally, Defendants' actions constitutes purposeful availment/direction of/towards this jurisdiction because, on information and belief, Defendants (and/or their agents) intentionally took actions expressly aimed at this judicial district and which caused harm in this judicial district by denying Plaintiff's derivative rights to *Maniac Cop*; and/or (2) that Defendants and their agents' actions were the result of reckless disregard for, or willful blindness to the Plaintiff's rights.

8.   Venue is proper in this judicial district pursuant to 28 U.S.C. §1391, as this is the judicial district in which a substantial part of the events giving rise to the claims occurred.

## FACTUAL BACKGROUND

### FACTS COMMON TO ALL CLAIMS
### Chain of Title For *Maniac Cop*

9.   The original 1988 motion picture, *Maniac Cop*, is identified in U.S. Copyright Registration PA 382-678, registered August 29, 1988, as having been created in 1988, published February 26, 1988, with a copyright claimant of Shapiro Glickenhaus Entertainment Corporation ("SGE"), identified authorship on the application as "Larry Cohen, employer for hire."  A true and correct copy of the copyright registration is attached hereto as Exhibit 1.

10.   On information and belief, a Motion Picture Financing, Production and Distribution Agreement ("FPD Agreement") dated as of July 1, 1987 was previously entered into by SGE's affiliated single purpose production entity (Marble Hall Productions, Inc. – "Marble Hall") and was signed by Larry Cohen on behalf of Defendant Larco Productions, Inc. ("Larco" -- Larry Cohen's wholly owned "loan-

out" corporation)[1] transferring all rights in the Picture and the Screenplay upon payment of certain sums by Marble Hall.

11.   Paragraph 16(a) of the FPD Agreement provided:

16. Grant of Rights.

> (a) Upon payment to Larco of the full amounts set forth in Section 4(a) hereof, Magnum and Larco will be deemed to have automatically and exclusively transferred and assigned to Company [Marble Hall] all rights of every type in and to the [*Maniac Cop*] Picture and the Screenplay, but subject to paragraph 20 hereof, and all of the literary and dramatic material upon which it is based, including, but not limited to the right to produce and distribute motion pictures, including the Picture, based upon such Screenplay.

12.   Attached to the FPD Agreement was Exhibit 1 thereto, a "letter of inducement" dated July 1, 1987 establishing a "work made for hire" agreement from Larry Cohen to the "Lender," Larco.  Larco thereby acquired all rights to the picture and screenplay from Larry Cohen, which rights were, in turn, acquired by Marble Hall pursuant to paragraph 16(a) of the FPD Agreement, as alleged *supra*.

13.   On information and belief, the payment to Larco was duly made by Marble Hall, and the original motion picture was produced and released worldwide in 1988.

---

[1] A "loan out" corporation is a structure in which an entertainment professional becomes an employee of the corporation and the corporation "loans out" the services of the employee/shareholder.

14.     The copyright registration certificate for the original *Maniac Cop* picture (Ex. 1) identifies claimant as SGE and prima facie, all rights in the motion picture were owned by SGE at the time of registration, especially as this registration was made within 5 years of release of the film in 1988.

15.     Two sequels to this original motion picture were produced and distributed worldwide - *Maniac Cop 2,* also having a screenplay written by Larry Cohen and distributed worldwide in 1989, and *Maniac Cop III: Badge of Silence*, again having a screenplay written by Larry Cohen and distributed worldwide in 1991.

**Documents Transferring Sequel and Remake Rights**

16.     The significant documents evidencing the chain of title through which Cordell ultimately acquired the derivative sequel and remake rights to *Maniac Cop* are as follows:

a.   FPD Agreement by Marble Hall dated July 1, 1987 (A true and correct copy of which is attached as Exhibit 2).  That agreement contained a "Section 20" reserving certain remake and sequel rights to "Company," which was at that time Marble Hall, an affiliate of SGE.

b.   Assignment of Sequel and Remake Rights by Marble Hall to The Movie House Sales Company Limited dated May 1, 1989.  This document references Section 20 of the original FPD Agreement and acknowledges that a copy of that Section 20 has been received. (Exhibit 3)

c.  Assignment of Rights for Future Productions by The Movie House Sales Company Limited to Overseas Film Group Inc. dated July 26, 1991 (the "1991 Assignment").  This includes (as part of Exhibit A thereto) a revised version of Section 20 which the parties agreed would supersede the earlier version of Section 20, but which is substantially similar, albeit with modified compensation.  A true and correct copy of the 1991 Assignment is attached hereto as Exhibit 4.  Paragraph 3 of Exhibit A to the 1991 Assignment provided as follows:

3. Magnum and Larco hereby confirm that paragraph 20 of the Maniac Cop II Agreement (a copy of which is attached hereto as Exhibit "B" for reference purposes) supersedes and replaces any and all provisions relating to sequels and remakes of the Prior Pictures contained in any of the documents referenced in the recitals to this offer letter (collectively, the "Underlying Documents"). Overseas hereby agrees that, subject to paragraph 7(e) below, the terms of said paragraph 20 shall apply in the event production of any applicable sequel or remake does not commence within the applicable time period therein specified.

COMPLAINT

The revised Section 20(a)(i) provided:

**20.    Sequels and Remakes.**

(a)(i) In the event that Company desires to produce or licence a production of a sequel or remake of the Picture, it shall offer in writing to Magnum and Larco jointly the opportunity to provide a screenplay written by Larry Cohen for such production and to render all of the services in connection with such production as are to be rendered by Magnum, Larco and Producers pursuant to this Agreement in connection with the Picture on the same terms and conditions of this Agreement save that the payment to Larco in paragraph 4(a) and to Magnum in paragraph 4(b) shall be increased to $250,000 in respect of each such sequel and remake   Company shall have the right to produce such sequel or remake using a screenplay other than the one to be written by Larry Cohen, provided that such use will not reduce the compensation otherwise payable to Larco in connection therewith.

d.   (Thereafter, Overseas changed its name to First Look Media, Inc. and then, First Look Media Inc., changed its name to First Look Studios, Inc.)  Subsequently, Millennium Entertainment LLC ("Millennium") became the successor in interest to, and thereby acquired all of the First Look entities' rights to all three of the *Manic Cop* pictures, including derivative rights.

e.   Thereafter, Cordell entered into an Option and Purchase Quitclaim Agreement ("Option Agreement") with Millennium dated August 23, 2012 providing Cordell with an option to acquire all rights to the *Maniac Cop* franchise, specifically including derivative rights to produce

remakes and sequels.  A true and correct copy of the Option Agreement (save for certain pages of exhibit A excluded for brevity as they are duplicative of Exhibit 4, *supra*) is attached hereto as Exhibit 5.

f.   The Option Agreement was extended by subsequent agreement.  A true and correct copy of the Option Extension is attached hereto as Exhibit 6.

g.   Finally, in 2015 Cordell exercised its rights to purchase the derivative rights to the *Maniac Cop* franchise under the Option Agreement  and thereby acquired all remake and sequel rights. A true and correct copy of correspondence and of the check transmitting payment for the option fee is attached hereto as Exhibit 7.

17.   The operative version of Section 20 (as set forth in Exhibit 4) is broken down into three separate paragraphs.

a.   Section (a)(i) requires that the Company [now, Cordell ] offer "to Magnum[2] and Larco jointly" the chance to allow Larry Cohen to write a screenplay.

b.   Section (a)(ii) covers the situation in which Larco and Magnum decline in writing the offer under (a)(i) and is not applicable here.

c.   Section (b) covers the eventuality where Company does not make the required offer under (a)(i), yet allows in effect Larco and Magnum to

---

[2] Magnum was Bill Lustig's loan out corporation.

COMPLAINT

produce or license  "one sequel or one remake" provided that they offer the Company upon thirty days prior written notice an opportunity to participate in that production.

18.   The effect of these provisions is that any production company acquiring the remake and sequel rights set out in Section 20 of the FPD Agreement would have the obligation to jointly offer Magnum and Larco the opportunity to provide a screenplay written by Larry Cohen.

19.   But, Larry Cohen died on or about March 23, 2019 without, on information and belief, having written a screenplay for any sequels, prequels, or other derivations of *Maniac Cop* (besides *Maniac Cop 2* and *Maniac Cop III*).  Following his death, it is obviously impossible for Magnum and Larco (or anyone) to provide a screenplay written by Larry Cohen. In any event under Section 20 (a)(i), the producer was only obligated to *provide the opportunity* to Magnum and Larco to provide a screenplay written by Larry Cohen; the agreement allowed for the possibility that the production company could use a different screenplay author, and the agreement nowhere prohibits the producer from producing or licensing a new production of a sequel or remake without Cohen's involvement.

20.   Section 20 (b) could have applied. It describes what happens if the Company has not offered Magnum and Largo jointly the opportunity to participate in the production. There, it simply gives Magnum and Largo the opportunity to produce

one sequel or one remake under certain conditions.  It does not restrict the Company from producing a sequel or remake.

21.   Moreover, death of the promisor in a personal services contract or impossibility of performance excuses performance.  If impossibility of performance occurs after making an agreement, the duty is discharged, thus, his or her performance is excused.  There is, therefore, no obligation on the part of Cordell to provide Larco a right to create a screenplay since it would be impossible to perform such obligation.

22.   The 1987 FPD Agreement between Marble Hall ("Company"), Larco and Magnum Motion Pictures, Inc. contains Section 16, Grant of Rights provision which states:

> (c)  The Picture shall be owned exclusively by Company.  All of the results and proceeds of the services to be rendered by Magnum and Larco hereunder will be "works made for hire" as such term is understood under the United States copyright law with Company as the author and thereof.

This document was signed by Cohen on behalf of and as president of Larco.  A page at the end of the FPD Agreement (Exhibit 1 to Exhibit 2), although apparently unsigned, explains the relationship between Larry Cohen and his loanout company

(Larco) making Larco the author of the work as a work made for hire:

<u>EXHIBIT 1</u>

Dated as of July 1, 1987

Marble Hall Productions, Inc.
1619 Broadway
Suite 303
New York, New York 10019

Re:  <u>"Maniac Cop"</u>

Gentlemen:

Reference is made to the agreement (herein the "Agreement") dated concurrently herewith among you and Larco Productions, Inc. [("Lender")] and Magnum Motion Pictures, Inc. [("Lender")] for the services of the undersigned in connection with the above-referenced project.

As an inducement to you to enter into the Agreement and as a material part of the consideration moving to you for so doing, the undersigned hereby represents, warrants and agrees as follows:

1.  That the undersigned has heretofore entered into an agreement granting all rights to the Lender in the "Screenplay" (as defined in the Agreement) and covering the rendition of the undersigned's services for Lender.  Lender has the right and authority to enter into the Agreement and to grant to you the rights in the Screenplay and to furnish the services of the undersigned upon the terms and conditions therein specified.

[highlighting added].

23.     In any event, the combination of the FPD Agreement signed by Larry Cohen as president of his loan out company estops any successor from denying that this was a work made for hire or otherwise has not assigned the remake and sequel rights.  This evidences Larry Cohen's intention that the screenplay for *Maniac Cop* was to be a work made for hire signed substantially contemporaneously with the

12

writing of the screenplay.  In addition, a certificate of authorship (attached to Exhibit 4) further memorializing the status of the original work as a work made for hire, was signed, on information and belief, in 1991, by both Larry Cohen and Larco and references an effectiveness date of July 1, 1987:

same shall be binding upon and inure to the benefit of Producer's licensees, successors and assigns.

This Certificate of Authorship is executed pursuant to and is subject to all of the terms and provisions of the Agreement.

Employer and Author have caused this document to be executed as of July 1, 1987.

LARRY COHEN

LARCO PRODUCTIONS, INC.

By:
Its:

## FIRST CAUSE OF ACTION

### (Declaratory Relief Re: Copyright Ownership As A Result Of Work Made For Hire)

24.     Plaintiff repeats, realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 23, inclusive, of this Complaint as though fully set forth at this place.

25.     There is an actual and justiciable controversy.  Plaintiff has a real and reasonable apprehension of litigation in the event that plaintiff attempts to exploit its

derivative rights in the *Maniac Cop* motion picture. Plaintiff has engaged in conduct which brings it into adversarial conflict with Defendants.

26.     Defendants have expressly threatened those with whom the Plaintiff has conducted actual business with infringement claims resulting in a termination of a development and production agreement.

27.     That threat still exists and prevents Plaintiff from moving forward with plans to exploit the work with others.

28.     Cordell owns all sequel and remake rights in and to *Maniac Cop*;

29.     Defendants contend and Plaintiff denies that the Defendants owno any remake and sequel rights in *Maniac Cop*.

30.     Plaintiff desires a judicial determination that Defendants have no right to make, exploit, distribute or prevent the sequel or other derivative works based in whole or in part on the story and/or the 1988 *Maniac Cop* film in the United States or elsewhere.

31.     A declaration is necessary and appropriate pursuant to the Declaratory Judgment Act, 28 USC 2201 et seq. so that Plaintiff may ascertain its rights with respect to the new sequel of *Maniac Cop* it is producing and any future derivative works based in whole or in part on the story and/or the 1988 film.

COMPLAINT

## SECOND CAUSE OF ACTION

### (Alternative Claim For Declaratory Relief Re: Ownership Of

### Sequel And Remake Rights In Plaintiff)

32.     Plaintiff repeats, realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 31, inclusive, of this Complaint as though fully set forth at this place

33.     Even if for some reason the work made for hire provision, 17 U.S.C. § 101 "definitions" as to "work made for hire" of the Copyright Law were not valid or sufficient to establish the rights in "*Maniac Cop*" initially in Larco (and not Larry Cohen, individually), all the rights in copyright for remakes and sequels were still effective and transferred ultimately to Plaintiff via the orderly process of the three *Maniac Cop* feature films that were produced, distributed worldwide, are still in distribution worldwide, after all remake and sequel rights were purchased by Cordell..

34.     This claim is based on declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, as to the determination of ownership rights in copyright based on interpretation of 17 U.S.C. § 204(a) as to the meaning of "conveyance or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed of such owner's duly authorized agent."

35.     The copyright interests in relationship to sequel and remake rights, if any, in one or more of the copyrights in the story *Maniac Cop* was transferred to

COMPLAINT

subsequent owners and licensees of the screenplay and motion picture "*Maniac Cop*" by one or more of the following actions:

    a.  The signature by Larry Cohen on behalf of Larco on the FPD Agreement in connection with the original *Maniac Cop* production.

    b.  The participation of Larry Cohen and his company Larco in each of the three motion picture productions of *Maniac Cop* which were distributed worldwide.

    *c.*  The subsequent execution of agreements in connection with *Maniac Cop 2* and *Maniac Cop III* by Larry Cohen.

    d.  The execution of a document by Larry Cohen recognizing the work made for hire status of *Maniac Cop* in 1991, with an effective date of 1987.

    e.  The acquisition of rights from Larco Productions, Inc. by Overseas Film Group, later renamed as First Look Studios, Inc.

    f.  The acquisition by Millennium Entertainment Inc. of remake and sequel rights from First Look Studios, Inc.

    g.  The acquisition by purchase of remake and sequel rights by Cordell, LLC from Millennium Entertainment Inc.

COMPLAINT

36.     A declaration is necessary and appropriate pursuant of the work for hire provisions of the Copyright Act, for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

### THIRD CAUSE OF ACTION

### (Declaratory Relief re: Lanham Act 43(a)(1)(A))

37.     Plaintiff repeats, realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 36, inclusive, of this Complaint as though fully set forth at this place.

38.     There is an actual and justiciable controversy.  Plaintiff has a real and reasonable apprehension of Lanham Act litigation in the event that plaintiff attempts to exploit its derivative rights relating to *Maniac Cop*.  A significant value of the *Maniac Cop* work is the title, a designation of origin, which is inextricably tied to the story.  The ability to exploit the title of the work is intimately connected with the ability to exploit the copyright in the underlying work.  The film title has resulted in a cult following for the film, it is known and it has become a mini-franchise film in which a significant value to the film rights is tied to the title.

39.     Plaintiff has engaged in conduct which implicitly brings it into adversarial conflict with Defendants.  Defendants have expressly threatened those with whom Cordell has conducted actual business with infringement claims resulting

in the termination of a development agreement.  That threat still exists and prevents Cordell from moving forward with plans to exploit the work.

40.     Plaintiff seeks declaratory judgment 1that it has right to the use of the name "Maniac Cop" in connection with film, television and other audiovisual media and an injunction to prohibit Defendants from interfering with the use of that moniker or designation or origin by asserting that Plaintiff lacks rights to do so.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against each and every Defendant, jointly and severally, as follows:

**As To The First Cause of Action:**

    **A.**    For a Declaration that Plaintiff owns all rights in and to *Maniac Cop* and general, compensatory and statutory damages according to proof at the time of trial herein;

    **B.**    For a temporary restraining order and preliminary and permanent injunctions enjoining each and every Defendant, from interfering with Plaintiff's work to produce a sequel, remake, or prequel to *Maniac Cop*;

    **C.**    For a declaration that Plaintiff is entitled to all the full and complete rights regarding remakes, sequels and/or prequels to *Maniac Cop*;

    **D.**    For a declaration that Plaintiff owns the exclusive remake, prequel and sequel rights to *Maniac Cop;*

E.      For Plaintiff's attorney's fees incurred herein;

F.      For an award of costs; and

G.      For such other and further relief as may be just and proper.

**As To The Second Cause of Action:**

A.      For a Declaration that Plaintiff owns all rights in and to *Maniac Cop* and general, compensatory and statutory damages according to proof at the time of trial herein;

B.      For a temporary restraining order and preliminary and permanent injunctions enjoining each and every Defendant, from interfering with Plaintiff's work to produce a sequel, remake, or prequel to *Maniac Cop*;

C.      For a declaration that Plaintiff is entitled to all the full and complete Rights regarding remakes, sequels or prequels to *Maniac Cop*.

D.      For a declaration that Plaintiff owns the exclusive remake, prequel and sequel rights to the *Maniac Cop*.

E.      For Plaintiff's attorney's fees incurred herein;

F.      For an award of costs; and

G.      For such other and further relief as may be just and proper.

19

**As To The Third Cause of Action:**

A.    For a Declaration that Plaintiff owns all rights in and to *Maniac Cop* and general, compensatory and statutory damages according to proof at the time of trial herein;

B.    For a temporary restraining order and preliminary and permanent injunctions enjoining each and every Defendant, from interfering with Plaintiff's work to produce a sequel, remake, or prequel to *Maniac Cop*;

C.    For a declaration that Plaintiff is entitled to all the full and complete rights regarding remakes, sequels or prequels to *Maniac Cop;*

D.    For a declaration that Plaintiff owns the exclusive remake, prequel and sequel rights to *Maniac Cop*.

E.    For Plaintiff's attorney's fees incurred herein;

F.    For an award of costs; and

G.    For such other and further relief as may be just and proper.

Dated: July 7 , 2023

                                        BRAUNSTEIN & BRAUNSTEIN, P.C.

                                        By: /s/ George G. Braunstein
                                             George G. Braunstein,
                                             Attorneys for Plaintiff
                                             email: info@braunsteinpc.com

                                        TIMOTHY D. McGONIGLE, P.C.

                                        By: /s/ Timothy D. McGonigle
                                             Timothy D. McGonigle,
                                             Attorneys for Plaintiff
                                             email: tim@mcgoniglelaw.net

20

**DEMAND FOR JURY TRIAL**

Cordell, LLC hereby demands a trial by jury of this action pursuant to the

Federal Rules of Civil Procedure, Rule 38(b) and Local Rule 38-1.

Dated: July 7, 2023

BRAUNSTEIN & BRAUNSTEIN, P.C.

By: _s/ George G. Braunstein_
George G. Braunstein,
Attorneys for Plaintiff
email: info@braunsteinpc.com

TIMOTHY D. McGONIGLE, P.C.

By: _s/ Timothy D. McGonigle_
Timothy D. McGonigle,
Attorneys for Plaintiff
email: tim@mcgoniglelaw.net

21

COMPLAINT